310-0865, the Department of Transportation, Accountant Stephanie Garrett v. James F. Haley Sr. et al. at the Lee, Williams, and Cleveland. May it please the Court, Counsel. My name is Stephanie Garrett, and I, along with Antonio Pritchard, represent the appellant in this case, the Department of Transportation of the State of Illinois. Your Honor, this appeal is about the trial court's errors in M. No. Domain law that prejudice the jury verdict and require a new trial. As the United States Supreme Court said in U.S. v. Commodities Trading, the constitutional requirement to pay just compensation means compensation that is just both to an owner whose property is taken and to the public that must pay the bill. In this trial, the jury determined the following issues. First, the value of the part taken, and second, the value of any damages to the remainder property. There were, however, two rules of M. No. Domain law that were violated during trial. The first is that the defendants did not link certain damages testimony to their valuation witnesses' analysis of a decrease in the fair market value of the remainder property. That means that that testimony was legally irrelevant, and it was inadmissible. Certain damages testimony was also incompetent, and therefore inadmissible. The second rule is that defendants' valuation testimony included the influence of the roadway project at issue in this case, and that is specifically prohibited. Your Honors, it is the court's duty to allow any relevant and competent evidence before a jury. The trial court in this case failed to do so, and those errors individually and collectively prejudiced the trial. They skewed the range of value impermissibly high for both the part taken and for damages to the remainder, and a new trial is required. There are two main arguments in the Department's appeal, and these concern evidence that the jury was impermissibly allowed to hear. The first is that there was impermissible damages testimony, and the second is that there was testimony that included the influence of the roadway project on the value of the property. First, the impermissible damages testimony. Defendants' retained civil engineer, Joseph Scanina, and the property owner, Michael Haley, both testified to significant damages that defendants' valuation witnesses did not link to any impact on the fair market value of the remainder. Both Scanina and Haley also testified to items that were incompetent and not recoverable in eminent domain proceedings. The impermissible testimony can be summarized as follows. Michael Haley testified in his observations of flooding on the property that occurred in 2009 that was during construction of the roadway project. Joseph Scanina, the civil engineer, testified that the project damaged the property because, first, it required that the elevation of the remainder be raised by both stripping a certain amount of dirt off of it and then importing fill. Second, that raising this elevation would cost an estimated $1,695,000 to do so. Third, that the project changed the drainage of the site and would cause flooding on the remainder. And fourth, that the project would cause the remainder to be restricted to one driveway on the relocated West Frontage Road. In this case, the defendants claimed damage to the remainder property as a result of the project. That means it was defendants' burden of proof to establish that those damages caused an impact on the fair market value of the remainder. In eminent domain cases, juries looked to valuation witnesses for their opinions and their analysis of value. But in this case, the jury also heard testimony about damages that were not connected to any decrease in value of the remainder. And there was no evidence at trial regarding these particular claim damages that they had any effect on the value of the remainder. Meaning they were legally irrelevant and impermissible. And what's an example of that? Your Honor, specific examples would be, one, Michael Haley talking about flooding on the property. That was not at all testified to any of the three valuation witnesses that defendants presented at trial. But they talked about raising the height of the property, though, right? No, none of the valuation witnesses did, Your Honor. Not at one. Not at trial. They specifically identified factors. They were asked specifically about their factors in terms of valuing the property before the project and after the project. The heights of issues. Correct. And none of those factors, none of those elements that they specifically talked about. And they talked about things like, now you have a remainder property that's divided in half. Now you have irregular remainders. Now you have not enough depth to be able to develop the property. Not one of those three witnesses talked about any of the elements that I just described. The $1,695,000 cost to raise the remainder. The need to raise the remainder by stripping and filling in the property. The fact that there would only be one driveway located on the west frontage road on either side after the project. And these drainage and flooding issues. Not one of them. Let's assume that the jury did receive improper evidence regarding the $1.6 million necessary to strip topsoil and replace it with clay. You know what figure I'm talking about? Yes. If that was in error, then why wasn't the error cured by instruction, I want to say 19. But it's the instruction that told the jury you can't consider this when determining the value after the tape. Your Honor, it was instruction number 19. And what 19 said was that the jury was not to consider the $1,695,000 as a specific and separate item of damage. The problem, however, is it didn't tell the jury not to consider it at all, which is the case law. The case law is because- And that was addressed in your motion in limine number seven, I believe. Part of it was, but the problem is that the motions in limine, or I guess the issue is, the motions in limine were based on the anticipated trial testimony. We presented motions in limine pretrial based on what defendants, expert witnesses, and fact witnesses testified regarding certain items. So it was based on their pretrial reports, based on what they testified to in their deposition. Did your motion in limine allege that the evidence was inadmissible versus speculative? At the time, well, it depends. For certain items, they weren't inadmissible. I'm talking about the $1,695,000. Yes, that it was speculative and that there was no substantive basis for it. But not that it was irrelevant based on the case law or inadmissible based on case law? The difference is that at trial, defendants' valuation witnesses changed their testimony from their pretrial reports and their depositions. So at trial, the issue was different than it was in the motions in limine. And the motions in limine at that stage, those valuation witnesses had talked about those damages elements, but they abandoned them at trial. On what basis do you think the jury did disregard the instruction and considered that $1,695,000? Yes. What is your basis for concluding that they did factor that in? Well, Your Honor, in terms of prejudice, first of all, you have the jury verdict, which is at this point, assuming that the testimony was irrelevant, I guess we'll go with your assumption, which I'm happy to go with, that based on that irrelevant information, legally irrelevant information, you have an incredibly large range. You have $2 million approximately between the department's value of the part taken and the defendant's opinion's value of the part taken. And you have over $3 million between the department's opinion of any damage to the remainder and the defendant's opinion of damage to the remainder. The jury came in within the defendant's range on the part taken and within thousands of dollars of defendant's numbers for damages to the remainder. So clearly, they were skewed on the high end. And the case law that's in our brief specifically explains that when you've got impermissible evidence that the jury shouldn't have heard and you have verdicts that are skewed higher, the end opposite the party that's objecting to that testimony, that that's evidence that means that the jury was impacted by it, and you can't separate that out. Sheridan testified that the square foot value after the remainder was $1.90. But did he take into consideration this $1.6 million in damages? I don't think he did. At trial, he didn't testify about it. And so that's the problem. Did anyone of Haley's witnesses testify that this $1.6 million factored into their value? None of the valuation witnesses did. So why are we to assume that the jury considered it if the valuation witnesses didn't and their verdict wasn't within the range? Because the jury heard things like that enormous number, almost $1.7 million. They don't know what to do with it. They're told by a civil engineer who is presented as an expert, they're told by the property owner who says, my property flooded, that there are flooding and drainage issues. They don't know that if that information isn't specifically tied into the fair market value of the remainder, that they're to disregard it. And that's why we presented the two proposed jury instructions that the judge denied, which were 17 and 18, which specifically followed up on our motion to strike that the court denied, which said, look, because defendants didn't tie this into the fair market value, it's irrelevant. It is legally irrelevant to this trial, and the jury shouldn't hear it. Do you know what dollar per square foot they allowed as damage to the remainder, excuse me, depreciation to the remainder? You could figure it out if you took their total dollar value and then divided it by square foot. If you took the acreage that was left, multiplied it by the square footage, and then you could calculate it that way. But all that we know, in terms of the record, is the jury verdict for one number, that $3 million number. And IDOT's position was that the remainder did not depreciate, but actually increased in value because of the project. The department's witness is taking everything into account, because the way that the remainder is valued, taking the project into account, is you value it before the taking, and then you value it after the project, taking into account the impact of the project. You look at any possible benefits, you look at any potential damages, and then you come up with your opinion. Throwing all of that information into the pot, the defendant's appraiser said, you know what, access to this property is increased so tremendously, because that was one of the purposes of this project, was to specifically give access to the area of the subject property that didn't have it before, that we think benefits that way, the damages. Do you think the jury accepted that? All we have is their verdict. Well, the verdict awarded an average in Haley's test expert witnesses. Well, we don't know that, Your Honor. I mean, all that we know is the number they came up with. The math computes. They awarded $3.95 per square foot, and that's the average of $4.10, $4.00, and $3.75, when you calculate what Sheridan, Klusinski, and McGarrett testified. Right, but, Your Honor, the case law is clear in that we are to take no inferences. Exactly. We are not allowed to do that. The only record that we have is the jury's verdict on the part taken and the jury's verdict on damage to the property. Okay. Well, then let's look at the jury's verdict on the value of the remainder after the taking, being $2.02 per square foot. Do you think that's unreasonable? I think it's unreasonable, yes. Tell me why. Your Honor, because in this, well, there's several factors. One is there was all of this impermissible evidence that was legally irrelevant, that was also speculative, that's not allowed under eminent domain case law, which is explained in the briefs. The lease testimony and the $1.6 million. Well, and additional items, that there would be only one driveway allowed on this relocated frontage road, which would impact access to the property, that was another item that was improper, that there would be flooding and drainage on the property. All of those items were either irrelevant in terms of not being tied to fair market value or were speculative or not allowed in eminent domain proceedings. For example, any damages that anybody alleges that occurred during construction of a project are not recoverable in an eminent domain proceeding. That's for the Illinois Court of Claims. But there were none claimed here. Pardon? There were none claimed here. But the jury heard the testimony. So what is the jury to do with the testimony? They hear all of these horrible damages. What damages did they hear about that occurred during construction that they may have considered in reaching this $2.02 per square foot? That there would be flooding on the property, that there was flooding that occurred during construction, and so they could infer that the project then caused that flooding. All right. Was there another question pending? No. I apologize. Okay. Your Honors, the public policy reasons behind why in eminent domain law you can only recover for a decrease in fair market value of the remainder caused by the project are important to consider in this case. Evidence of damages to the remainder is inadmissible unless it's specifically related to diminution in the fair market value of the land. And that means, as we were just discussing, how you determine value of the remainder before and value of the remainder after, that in considering any items of damage, valuation witnesses are required to specifically look at what the value of the property would be without any of these damage issues and then taking those into account, which is not what happened in this case. Well, the three Haley experts, what was their error in their valuation testimony, of the three Haley experts? The error wasn't necessarily their testimony. The error was that their testimony didn't link up the engineer and the property owner's damages. I mean, if you look at the three Haley experts, you're not complaining that there's error in their testimony. No, not for this appeal, we are not. Because their valuation testimony was in line with eminent domain law. Yes. Counsel has two minutes. Okay, I'm going to pick on you a little further. I'm really troubled by the $1.6 million. Let's take the jury's award of $3,075,292.50 and subtract out that $1.6 million. That would be an award of about $0.90 a square foot. If we just erase the $1.6 million, do you think $0.90 a square foot would be a reasonable value? Your Honor, the difficulty is we don't know what the jury did with that number, and that's what the case law tells us. Well, isn't IDOT's position that any value in excess of zero, which is what your witness has testified to, is unreasonable? No. For purposes of this appeal, IDOT's position is that this range was impermissibly high and that there was impermissible evidence allowed for the jury to hear, that the court failed to act as gatekeeper, which is the court's role in this case, and to make sure that the jury only heard admissible evidence and competent evidence. But your witness has testified to the range of zero. Correct. All right. I understand. I am not saying for purposes of this appeal that if the jury awarded something over zero that that would in and of itself be impermissible. The issue in this case is because the jury heard all of this clearly prejudicial information, and another item to consider in terms of why we know the jury thought it was prejudicial is during the jury view, the jury was allowed to ask questions. Five out of the nine questions had to do with flooding and drainage. Five out of the nine. Because wasn't it wet when they were there? But it was also immediately after the testimony of the civil engineer Joseph Scanina, the property owner Michael Haley, both of whom talked about this legally impermissible issue of drainage and flooding, and the first valuation witnessed by the jury. But it was wet when they were there. There was some water on the property, yes. And so did IDOT object to the show-up or taking the jurors? The jurors, no. We did not.  We scheduled the jury view based on when they wouldn't be completely covered in mud. It was off and on raining. The trial was in June. You know, the weather around here, it was, you know, day by day. Now the valuation was within the range. Pardon? The valuation was in the range of the experts. It was, Your Honor, but that assumes, one, that that range was proper, and two, that the trial courts allowed to completely abrogate her role as gatekeeper. And again, you have no complaints about the testimony of the Haley experts? The valuation experts. For purposes of this appeal, we are not, we are, the issue is that there was impermissible testimony by other witnesses that they didn't link up. Along with the fact, actually, I should back up, there is the second issue in terms of the impermissible influence of the project, which did tie into their valuation opinions. And so there is an issue on appeal based on the defendant's valuation witnesses talking about items that included the influence of the project. And so one is using the property, well, that was potentially going to develop on the east side of I-55, which is called Bridge Street, that that was predicated on this project and then a full access that would be built on top of it. And then two, they also used the Village of Shorewood's 2007 comprehensive plan, which designated this particular property as commercial, but again, that designation was premised on the roadway project. And so, thank you. Any further questions? Thank you. You'll get me a ribbon. May it please the court. I'm Leo Cianquino and I'm representing the Haley's. To review IDOT's claim of error here, in most of what counsel argued, learning counsel argued, which includes sections 2A, 2 through 5 of their brief, this court would have to ignore the holding of Forest Preserve District v. Lyman State, an eminent domain case decided by the Supreme Court of Illinois at 388 Illinois 429, 430, which holds that if you're going to object to evidence, you have to object at the time it's given, not at the close of the trial, after the proofs are closed. All these issues that counsel's arguing about that was irrelevant and wasn't linked up and so forth, were not objected to until, not at the close of our case, we went first, but at the close of their case, seven days after the testimony was given and five days after we wrestled. The Lyman case proves that this is a forfeiture. And if you look at their brief, they say, well, the Lyman case is only dealing with if there's a failure to object completely, but that is not correct. The Lyman case at page 429, I'm just going to read this out, it says, after the evidence was closed, which is what they did, a motion was made to strike out testimony of the sale because it was not free and open sale, because of a difference in time between the date of sale and the date of filing, and because of a change in the real estate market. These objections to proof of the sale were then too late. So almost everything is forfeited. What is not forfeited on the 1.695 million is that they say that it was, their objection to the motion eliminated, which is that the evidence was speculative. Now, speculative of an expert, that's a matter of cross-examination. It's not a question of admissibility. It is not at all a question of admissibility. And when you look at the objections that occurred at the beginning of trial in the motion eliminate, counsel, and they tried the case very well and very hard. I'm not criticizing anybody. We both tried the case on the issue of highest and best use. But when we argued the motion eliminate, they specifically said they were not objecting to any of Mr. Scanina's opinions as to flooding or drainage. And we have the page in the brief where they said that. And then no objection was made until the close of all the proofs. So I think that those issues are all forfeited. And you review a motion eliminate, a ruling by the judge on a motion eliminate. I thought that there was a continuing objection during all that testimony. There was a continuing. That was allowed by the trial court. There was a continuing objection as to the motions eliminate. And the denial of motion eliminate seven, which was based on speculation, that the opinion was speculative. But all the objection, the objection that the witnesses did not link up access or did not testify to how much it cost to fill or that there was only one driveway, those objections were not made until the close of evidence. At the close of evidence, after the close of evidence, seven days after the testimony, five days after we rest. Now that's, and also when you look at the objections before, that wasn't their objection. They admitted that all our appraisers considered all these factors in arriving at the opinions that they're not objecting to. In arriving at the opinion of fair cash market value and highest and best use after the tape, they admit in the argument and in their motion eliminate that our appraisers had considered it. The trial- Didn't their appraisers consider some of those issues too regarding accessibility? Their appraisers said, boy, the accessibility is even better now. They said it was better. We said it was worse. By the way, another- So it was good for them but not good for you regarding accessibility and the location of the driveway. That's what we contended that it was a problem. It's listed specifically in all the appraisals which are in evidence. All these things are mentioned and discussed at length. It's a question when you try the case, do you put on every single word? And by the way, I would say that one of the objections they had to the 1.695 million, Your Honor, Your Honors, is that they said, well, you know, all their appraisers considered this 1.695. We're going to be saying it over and over and over again and that's going to be a prejudicial. Well, we didn't say it over and over again. You know, there are some cases that say, and I think that the law is not clear on this, that the appraisers are not supposed to mention these class 2 juridicals. They're not supposed to mention them. Well, we didn't mention them. They didn't object to the testimony at the time and they objected seven days later after saying they had no such objection and after saying that the appraisals are based on them. And by the way, we have sites to the record where they did consider all these things, I think, quite properly and the trial judge in denying the post-trial motion found that they had considered it. So the... And I do think that if there was any confusion, that that special instruction certainly would limit it. And I want to add that that testimony by the engineer was admissible also under this court's ruling in the Hoffman case, which the counsel cites in their reply brief, because in your decision in the Hoffman case, you talk about the fact that, in that case, a pig farmer talked about how electrical power lines were going to hurt the pigs. And then you have what the appraisers said. The appraisers didn't say, well, I talked to the pig farmer, although our guys did talk to the engineer. They came to an opinion of value by taking comparable sales and adjusting them for the conditions after the take, which is exactly what our witnesses did. Exactly. Our witnesses valued the whole, the part taken, and then when they valued the remainder afterwards, they made a second appraisal. They considered six new sales, three of which had flooding issues. So, and the judge found that we had done, you know, had connected everything. The state doesn't object to the methodology of your three experts. No, they do not. And they never moved to strike them. You know, they never moved to strike our opinions. When counsel's implying here that the range was not, the verdict was not within the range of the evidence, but they never, and they say that right in their brief, the trial judge didn't allow in evidence. They never objected to our opinions of value. So how can they say the trial judge shouldn't have let in evidence? You know, their argument is, they're running this testimony, not the three evaluators. I mean, she said that here just now. Right. But what I was talking to says the verdict is within the range of the evidence, and I want to speak to that in a minute, but counsel in their argument and in their brief say, well, the verdict really wasn't within the range of the evidence because the judge should not have let in our opinions of just compensation. But they did not, as they said, they did not object to our evaluation witness's opinion. So the range of the evidence was properly before the jury. If this case... Well, what's the, you know, the, your three experts, the ones who used some property that was sometimes or partially flooded, was that cross-examined? I don't know if they cross-examined. They did cross-examine on the comparable sales, but not on that point. But we did put in that they were underwater in Ms. McGar's testimony, and she talked about it on her testimony. Of some of the properties that she used for evaluation. Right. And by the way, those three properties were also used by Mr. Klusinski and two of them by Mr. Sheridan. So we put in sales after the tape that had floodplain. And they said, well, we didn't object to a line because, well, what if you would have put on a rebuttal? Well, what rebuttal? They didn't even put on any evidence about the $1.695 million. They didn't put anything like that on. They put in studies that the property was below grade. And we had not... They said, well, you could have put on another, you could have put on another expert valuation. We didn't have another one. We put them all on. Now, I think, Justice Wright, you hit the nail on the head there when you were talking about, well, what the values were. This case turned on highest and best use before the tape. Completely and 100%. And both of us said it in opening and in closing. We were at an average of $3.95 a foot because it was commercial. They were at an average of $1.60 a foot before. So the jury obviously found commercial as the highest and best use. They were instructed to do that. They were given the square footages. So they multiplied the part taken times $3.95. Okay. That was a... And the verdict was very specific. It was $3,527,614.60. This jury took the time to multiply it out exactly. We know what they did. The cases that they're citing is that you can't overturn inconsistent verdict. We're just explaining the verdict. Now, so once the jury found commercial before, they're instructed the difference for damages to remainder is the difference between the value before and the value after. Okay. The value after by both sides is the same. They're at $1.90 to $2. Mr. White's $2 a foot. How is this prejudice? What does that have to do with the $1,695,000? It has nothing to do with it. Mr. White himself, their own appraiser, testified that the property afterwards was worth $2 a foot. The jury verdict equates to $1.93 a square foot. The average of the three witnesses who gave opinions that the property still had commercial potential afterwards, McGar and the two state appraisers, White and Bates. How is that prejudice? It's not prejudice. And I need to speak because they did have two issues that dealt with highest and best use, which if there was some big error there, that was the issue. That was the issue in this case. Highest and best use before the tape determined everything, as Justice Wright pointed out. So they objected to the comprehensive plan. It's an ordinance of the community. The ordinance, they agreed and invented, that had no reference to this project whatsoever in it. Now, how can a court say it was based on that, promised on their project, when there's nothing in it that says it's based on that? They have no reference even to it. It would be an error to not put it in. But even more, and just as importantly, they forfeited that issue because they, when I offered the 2007 comprehensive plan, no objection. And it goes in evidence. All their witnesses considered the 2007 comprehensive plan. They testified to it. They testified to the 1993 and the 2001 comprehensive plan. Bates and White. Bates and White. Yes, and Tonali also. And they put on a special witness to talk about 93 and 2001 and 2007. Now, and that was Ms. Roman. Bates, White. And I'm not criticizing Mr. Bates. As a matter of fact, in my brief, I'm arguing that, yeah, what he says is right and it supports us. And I think it did turn out that way. Now, in their brief, they said, well, wait a minute. We didn't waive this 2007 plan because we never asked them, our witnesses, what does the plan show as of 2007? And they exactly asked that question. Exactly. I can give you the page of the record here. It was the page before we cite in the brief. The question by counsel, and you're aware, Mr. Bates, that the 2007 plan shows this as commercial. Are you not? Yes. And what effect did that have on your opinion of highest and best use? It supported my opinion of highest and best use. How can it be error? First of all, it had nothing to do with the project. Nothing to do with it. And they have no evidence of that. How can it be error when they put it in themselves? Now, the other, Bridge Street, this is an interesting point, because not only do they have no evidence, real evidence, that it was affected by the project, they have some documents from our appraiser's files, an ordinance and an advertisement. But that evidence is just evidence from an appraiser's file. It's not omitted for the truth but for the basis of an opinion. But more importantly, the court found that it had no impact, that this project, this project has nothing to do with it. This project is on one side of 55, and that's on the other side of 55, and it was going to be done by Joliet. It had nothing to do with this case. And the judge found that. But also I want to point out that they did not object at trial to any of our opinions of highest and best use, and they did not object to using the Bridge Street property as an element of highest and best use, even though there were hundreds of other elements. They did not make that objection at trial, and they do not raise the denial of motion in Illumina 8, which was a sale of those Bridge Street properties, which was admitted. They do not raise that. They have a different objection. And, of course, the rule is that if you make a specific objection and it's been used against me, the case I cite is my own loss, and if you make a specific objection, you can't, you know, widen out your, well, you know, they use it for something else. You can't do that. Now, Mr. Haley testified that the property was underwater. He testified that this property never flooded, that before the tank there was no engineering problems with this property. And, by the way, that's another interesting thing about this case. They put on four engineers no evidence that there was any problem on site with this property before the tank, none. And Mr. Scanina testified to that. And there's no floodplain and no wetlands before. And Mr. Scanina testified in great depth about why the property was going to flood. The size of the culverts, their own witnesses admitted it also, by the way. And we contest, you know, Constance disagrees with me that that's what she argued and that's what is in the record. But the record's there, and, you know, you can, you know, I don't know. I think I'm right. I am right. But the jury heard both sides about the culverts. Yes, absolutely. Both sides about the culverts. Both sides about this. Their experts said the Seal Street culverts were fine. Yes. They weren't contributing to the flooding. Right. So it was the jury that determined that. The jury determined that, yes. And Mr. Haley, Mr. Haley's testimony was linked. I mean, Mr. Scanina testified that what Mr. Haley saw was an example of the flooding that was caused by this project. And he was subject to cross-examination on that, as he was on everything, and cross-examined quite vigorously and quite well. This case turned on the jury felt that the property had highest and best use of commercial before. And there were 15 commercial sales put in evidence, five by the government. The government had highest and best use of commercial. How can you say that it's speculative and wrong or whatever when you don't inject and you yourself have a highest and best use of commercial, admittedly, after the tape? Neither of us. Well, thank you very much. Do I have a clear understanding of Bates' testimony? He said it was likely it would be rezoned to allow industrial and commercial use. He said. But his opinion was the highest and best use would be industrial. It's correct. He did say that exactly after talking about the comprehensive plan, that you could have rezoned to everything. And then later in his opinion of the value after the tape, he said there was a reasonable probability of rezoning to commercial. Yes, Your Honor, you do have that correct. Thank you. Thank you very much. Thank you all. Counsel. Thank you, Your Honor. Your Honor, there are so many misstatements in what counsel has just told you that for sort of efficiency's sake, I would just refer you to our briefs. We specifically cite places in the record where either testimony did or did not occur. It would take me three hours to go through every single one of those. But I will tell you that not once in the record did any of defendant's valuation witnesses link up those damages testimony to their fair market analysis. And that's what the case law requires. And how many times did you object when that testimony was coming in? Your Honor, we did not have a basis for an objection until after defendants rested. Defendants went first, as counsel told you. It was their burden of proof to establish damages to the remainder. That means they had a right to rebuttal. Throughout the trial, counsel maintained that he might call witnesses on rebuttal. And we have a cite to the record in the briefs where in the midst of the department's case, he said he was still considering whether he would bring on evidence in rebuttal. What happened in this case is the testimony of defendant's valuation witnesses changed from pretrial to at trial. So all of the arguments counsel makes both in his brief and here at oral argument about concessions that we made or objections we did not make in the motions in limine are irrelevant to the motion to strike. The testimony that we were addressing in the motions in limine was different at trial. And we didn't know it wasn't relevant and we didn't have a basis to argue a motion to strike until defendants rested. They had the opportunity because it was their burden of proof to put in whatever evidence they needed to do to tie that up. Until they failed to do that, it was not right for the department to present a motion to strike. And the case law actually says that having cross-examined those witnesses, we would have waived it. We would have waived the objection on a motion to strike. We didn't know that they weren't going to tie it up with some of the valuation witnesses at some point or even attempt to put it on in rebuttal. And so until they finished their presentation, there was no issue. In the pretrial discovery, you had pretrial discovery on their three evaluation experts, right? We did. And how does that relate to the pretrial discovery? Your Honor, it's a different issue because all that matters here is the testimony the jury heard at trial. And the testimony the jury heard at trial didn't connect those damages items that they were testified to. Were they connected in the pretrial discovery? They were in the reports and depositions, but that wasn't presented to the jury. And there was no cross-examination on all that, no objections on any of that? Your Honor, it wasn't an issue until we knew that they didn't tie it up. Going into the trial, all of that was disclosed. So there wasn't an issue other than the motions in limine, which you have as part of the record. Those were the issues going into the trial. Those issues changed when defendants' valuation witnesses changed their testimony. They made it irrelevant, but we didn't have an argument to make until defendants rested their case. Were there any 213-F and G objections? For other reasons, but not for this, because it wasn't an issue. There was different testimony pretrial as opposed to at trial. Well, usually there's 213-F and G objections to inconsistencies. Right, but that objection would have been because certain evidence wasn't disclosed. In this case, it wasn't a disclosure issue. It was a legal relevancy issue. Well, you're saying the opinions changed. Right, but the opinions changed in terms of now there were evidence that came out through the civil engineer and through the property owner about all of these horrible damages that would happen to the property were not tied up at trial. So the jury didn't hear any evidence that was tied up. And what the case law says is if the jury doesn't hear evidence from the valuation witnesses that ties up those potential damages with an impact on the value of the remainder property after, it's irrelevant. And that's what happened at trial. As I understand it, your objection is relevancy. Yes. Okay. But there were no objections at the trial. Because it didn't become irrelevant until defendant rested. And as soon as defendant rested, we presented a motion to strike, saying it was irrelevant. Look, it's their burden. They put out their evidence. They didn't tie it up. It's irrelevant. So are you saying the opinions of the experts changed between the pretrial discovery and what was disclosed pretrial and at trial? Well, their bases for their opinions did. I mean, their numbers didn't change. Everything was the same, the numbers? Right. Right. Okay. And were there specific things in the bases that changed? They did at trial. They failed to include the items that I delineated here and in the briefs, those items about drainage and flooding and the cost to raise the property and the one driveway that would only be allowed on the relocated frontage road. I mean, the reason I'm asking this is under Wilson v. Clark and under our view of expert testimony, the expert can render an opinion and it's up to the cross-examiner to bring out what's defective of the bases, correct? Yes, but that's a foundational issue. Okay. Well, that's how we view the expert testimony. We're not a federal jurisdiction. We're our Wilson v. Clark jurisdiction. We still are, even with our code of evidence. So under those circumstances and under that case from the 80s, it's up to the cross-examiner to show the defects in the bases. But all the proponent of the expert has to do is get the opinion in. So they got the opinion in, and you have a right in pretrial discovery to have a basis for the opinion, and what you're saying to me now is that the basis of the opinion changed to the extent that at trial they didn't go through all the bases they did in pretrial. Is that right? Well, no. The issue is that there was testimony that came out at trial that was irrelevant at trial. Counsel, that's one minute. No, let's back up. Was there a basis by the three experts that the Haley witnesses, okay, was there a basis in the pretrial that wasn't used at the trial? There were items they abandoned at trial that they did not consider. And you didn't cross-examine them? No, I did not, because it is defendant's burden to tie that evidence up, and so it's certainly not the department's require or obligation to fix defendant's case. They presented legally irrelevant evidence when they presented all of these damages testimony that their evaluation witnesses didn't link up to the impact on value to remainder. They were specifically asked for those elements, and they outlined those elements, and those sites are in our brief. They outlined several elements in terms of what they considered. They did not name these particular elements. They did mention Michael Haley. And you have no objection to the way that the testimony came in from the Haley witnesses on valuation? You have no specific objection on their testimony? Well, the issue would be that second argument that we have in terms of the influence of the project on Bridge Street and the comprehensive plan. So that does go to the valuation witnesses' testimony. And that also impermissibly changed the range of evidence in this case. I think that's a separate issue than what you're talking about in terms of the relevancy. But going into the trial, the range, the numbers from the Haley witnesses remained the same? Correct. They did not change. Thank you, counsel. Thank you. We will take this matter under advisory and go with dispatch.